COLE v AUTO-OWNERS INSURANCE COMPANY

Docket No. 258002. Submitted May 2, 2006, at Lansing. Decided August 10, 2006, at 9:05 a.m. Leave to appeal denied, 477 Mich 949.

Jeremy Cole brought an action in the Washtenaw Circuit Court against Auto-Owners Insurance Company, seeking uninsured motorist benefits for injuries sustained when he was riding a bicycle and was struck from behind by a vehicle driven by an unidentified driver. While his policy provided coverage for injuries sustained as a "pedestrian," it did not define that term. The defendant had denied coverage on the grounds that the plaintiff was not a pedestrian at the time because he was riding a bicycle. The court, David S. Swartz, J., denied the defendant's summary disposition motion and granted the plaintiff summary disposition, concluding that the undefined term "pedestrian" was ambiguous and that, construing the term against the defendant, the plaintiff was a pedestrian and entitled to coverage. The defendant appealed by leave granted.

The Court of Appeals *held*:

The trial court erred when it ruled that the undefined term "pedestrian" in the policy is ambiguous. Because the term is not ambiguous, the trial court incorrectly applied the rule of construction that ambiguous terms must be construed against the drafter. Moreover, because the no-fault act does not mandate uninsured motorist coverage, the term cannot be construed liberally to effectuate the goals of that act. The plain and ordinary meaning of the term is "a person who goes or travels on foot." The plaintiff was not a pedestrian at the time of the accident because he was riding a bicycle.

Reversed.

INSURANCE — NO-FAULT — UNINSURED MOTORIST COVERAGE — PEDESTRIANS.

The term "pedestrian," for purposes of uninsured motorist insurance coverage, means "a person who goes or travels on foot" unless otherwise defined in the insurance policy.

*Ferris & Salter, P.C.* (by *Don Ferris*), for the plaintiff.

*Garan Lucow Miller, P.C.* (by *Sarah E. Robertson* and *Judith A. Moskus*), for the defendant.

Before: BORRELLO, P.J., and SAAD and WILDER, JJ.

SAAD, J. Defendant appeals by leave granted the trial court's order that denied its motion for summary disposition and granted summary disposition to plaintiff. We reverse.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff sustained injuries when he was riding a bicycle and was struck from behind by a vehicle driven by an unidentified driver. Plaintiff sought uninsured motorist benefits from defendant under a policy issued to his father. The policy provides, in relevant part:

> a. We will pay compensatory damages you are legally entitled to recover:
>
> (1) from the owner or operator of any uninsured automobile;
>
> (2) for bodily injury you accidentally sustain and which arises out of the ownership, maintenance or use of the uninsured automobile when you are a *pedestrian* or while occupying an automobile you do not own . . . .
>
> b. The coverage extended in 6.a. above is also afforded to a relative who does not own an automobile. [Emphasis altered.]

"Pedestrian" is not defined in the policy, and defendant denied coverage and explained that plaintiff was not a pedestrian within the ordinary meaning of the term because he was riding a bicycle at the time of the accident. Thereafter, plaintiff filed this lawsuit to recover compensatory damages.

Both parties filed motions for summary disposition pursuant to MCR 2.116(C)(10). Following oral argument, the trial court granted summary disposition to plaintiff and explained its ruling as follows:

The definitions of the term "pedestrian" provided by Defendant include a person who is walking, hiking, going or traveling on foot, walking as distinguished from traveling by car or cycle, and "a person on foot rather than in a vehicle." Under one definition—"walking as distinguished from traveling by car or cycle"—a person using a bicycle is clearly not a pedestrian. However, applying another definition—a "person on foot rather than in a vehicle"—a person using a bicycle is a "pedestrian." Because a fair reading under one definition of "pedestrian" leads to the conclusion that there is no coverage, and another fair reading under another definition leads one to understand that there is coverage, the Court agrees with Plaintiff that, under the applicable ordinary and plain meanings given, the term "pedestrian" is ambiguous. When a contract is ambiguous, the language must be construed against the drafter. Construing the term "pedestrian" against Defendant and in favor of coverage, the Court finds that Plaintiff was a "pedestrian."

The trial court entered the order on September 9, 2004, and, thereafter, this Court granted defendant's application for leave to appeal the trial court's decision.

## II. ANALYSIS

The parties agree that coverage depends on whether plaintiff was a pedestrian at the time of the accident.[1] "The interpretation of an insurance contract is a question of law that we review de novo." *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004). As

---

[1] This Court reviews de novo a trial court's decision on a motion for summary disposition. *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Summary disposition should be granted under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Roberson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).

this Court further explained in *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005):

> Uninsured motorist coverage is optional and is not mandated by the no-fault act. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993). Accordingly, the policy language governs the coverage and is subject to the rules of contract interpretation. *Id.* at 525. We read insurance contracts as a whole and accord their terms their plain and ordinary meaning. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). We will not strain to find ambiguity, *id.* at 567, but we ultimately strive to enforce the agreement intended by the parties. *Engle v Zurich-American Ins Group (On Remand)*, 230 Mich App 105, 107; 583 NW2d 484 (1998). A contract is ambiguous when its words may be reasonably understood in different ways. *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982) (opinion of COLEMAN, C.J.). If an ambiguous term exists in the contract, courts should generally construe the term against the contract's drafter, unless the drafter presents persuasive extrinsic evidence that the parties intended a contrary result.

If provisions of a contract irreconcilably conflict, the contractual language is ambiguous and the ambiguous language presents a question of fact to be decided by a jury. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467, 469; 663 NW2d 447 (2003). However, contracts are construed against the drafter only when there is a true ambiguity and the parties' intent cannot be discerned through all conventional means, including extrinsic evidence. *Id.* at 470-471.

As noted, the term "pedestrian" is not defined in the policy. Unless otherwise defined, contractual language is given its plain and ordinary meaning. *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 471-472; 688 NW2d 523 (2004). To determine the ordinary meaning of a term, we may refer to a dictionary. *Id.*

at 472. Importantly, however, a word is not ambiguous simply because dictionary definitions differ. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 317; 645 NW2d 34 (2002).

The plain and ordinary meaning of the term "pedestrian," as defined in *Random House Webster's College Dictionary* (1997), is "a person who goes or travels on foot." The term "pedestrian" is not ambiguous, and, under its common meaning, plaintiff was not a pedestrian under the policy because he was riding a bicycle at the time of the accident.[2]

The trial court relied on a definition supplied by defendant that defined "pedestrian" in part as "a person on foot rather than in a vehicle." That definition clearly does not support the trial court's conclusion that the term "pedestrian" is ambiguous and that plaintiff was a pedestrian at the time of the accident. While the term is defined by means of a comparison, the concepts being compared are not all-inclusive opposites. Further, because the term is not ambiguous, the trial court incorrectly applied the rule of construction that ambiguous terms must be construed against the drafter. *Klapp, supra* at 470-471.

Plaintiff maintains that, within the context of uninsured motorist coverage, "pedestrian" should be interpreted broadly to include those individuals who are not in or operating motor vehicles. However, while uninsured motorist coverage had historically been broadly

---

[2] Though not controlling, we note that, for purposes of the Michigan Vehicle Code, MCL 257.1 *et seq.*, " '[p]edestrian' means any person afoot." MCL 257.39. This definition corresponds with the dictionary definition of "pedestrian" noted above. See also MCL 257.655 (providing when a pedestrian may walk on a highway); *Bird v Gabris*, 53 Mich App 164, 167; 218 NW2d 871 (1974) (holding that a person who attempted to flag down an oncoming vehicle in an effort to avoid an accident was not a pedestrian within the meaning of MCL 257.655).

construed and considered portable when that coverage was mandated by statute, *Stoddard v Citizens Ins Co of America*, 249 Mich App 457, 460; 643 NW2d 265 (2002), that statutory mandate was repealed in 1973 after Michigan adopted no-fault insurance, *id.* at 460-461. Thus, because the Legislature enacted the no-fault act and elected not to require uninsured motorist coverage, parties are now free to contract as they see fit. Therefore, the purpose of the no-fault act, which is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault, *Griffith v State Farm Mutual Automobile Ins Co*, 472 Mich 521, 543; 697 NW2d 895 (2005), does not also apply to uninsured motorist policies.

Plaintiff further argues that courts in other states have concluded that "pedestrian" means a person not occupying a vehicle. Plaintiff primarily relies on *Tucker v Fireman's Fund Ins Co*, 308 Md 69; 517 A2d 730 (1986), but *Tucker* is clearly distinguishable because the discussion in *Tucker* hinged on the interpretation of Maryland's no-fault act. In contrast, our Supreme Court has unequivocally held that uninsured motorist benefit clauses in Michigan are construed under ordinary contract principles, not in reference to our no-fault act. *Twichel, supra* at 533.[3]

---

[3] In *Tucker*, the parties disputed a section of the Maryland Insurance Code that requires insurance policies to provide personal injury protection (PIP) benefits to cover persons " 'injured in any motor vehicle accident,' " including, but not limited to, " 'pedestrians injured in an accident in which the insured motor vehicle is involved . . . .' " *Tucker, supra* at 71 (emphasis in second quotation omitted). In *Tucker*, the injured plaintiff was sitting on a stool inside a parking lot attendant's booth when a vehicle struck the booth. *Id.* at 72. "Pedestrian" was not defined in the statute, and the plaintiff argued that the legislature intended "pedestrian" to mean those persons not operating or occupying a motor vehicle. *Id.* The defendant insurer claimed that the legislature elected not to define "pedestrian" because the legislature had previously defined "pedestrian" as " 'an individual afoot' " in the transportation

Plaintiff also claims that the term "pedestrian" should match the definition included in defendant's uninsured motorist policy written for insureds in Utah. The Utah policy defines "pedestrian" as "any natural person who is not occupying an automobile." We reject plaintiff's contention because the parties here did not agree to the language of the Utah policy and are clearly not bound by it. See *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997) (noting that under the common law, acceptance of the offer must mirror the terms of the offer). Further, defendant's Utah policy so defines "pedestrian" because, unlike Michigan, Utah requires insurers to provide uninsured motorist policy

---

article of the Maryland Code, which, the defendant argued, contained the motor vehicle laws of the state. *Id.* The defendant maintained that the two statutes should be construed harmoniously and that the common meaning of "pedestrian" for purposes of the statute was the same as that defined by the legislature in the transportation article. *Id.* at 72-73.

The *Tucker* court observed that the purpose of the disputed section was to compensate injured persons without regard to fault. *Id.* at 75. The court noted that nine jurisdictions had defined "pedestrian" in their statutes to mean something similar to the New Jersey definition: " 'any person who is not occupying, entering into, or alighting from a vehicle.' " *Id.* at 76-77 (citation omitted). The court further noted that five other states did not define "pedestrian" in their no-fault statutes, but the statutes nevertheless provided that "nonoccupants of a motor vehicle are entitled to recover PIP benefits under certain circumstances." *Id.* at 77. In finding that "doubt" existed about the intended meaning of "pedestrian," the court noted that the term should be liberally construed in light of its clear remedial purpose of the cited insurance statute. *Id.* at 77-78. The court, therefore, construed "pedestrian" to mean "all persons not occupying, entering, or alighting from a motor or other covered vehicle without regard to whether, when struck, they were actually traveling on foot, standing in a stationary position, sitting, or, as here, within some structure." *Id.* at 78.

Unlike the court in *Tucker*, we cannot construe the term "pedestrian" liberally in order to effectuate the goals of the no-fault act. Again, uninsured motorist benefit coverage must be construed without reference to our no-fault act. *Twichel, supra* at 533. As a result, *Tucker* does not support plaintiff's construction of "pedestrian."

coverage, Utah Code Ann 31A-22-302(1)(b), and specifically defines "pedestrian" essentially the same as defendant does in its Utah policy, Utah Code Ann 31A-22-301(7).[4] If our Legislature concludes that, like the Utah legislature, it will mandate uninsured motorist coverage as part of Michigan law, it certainly is able to do so and, like the Utah legislature, it may choose to define various terms. However, in the absence of such a mandate by our Legislature, there is no legal reason for us to adopt the definitional language used in Utah and urged by plaintiff, particularly when the meaning of the term "pedestrian" is clear and unambiguous.

For these reasons, the trial court erred when it ruled that "pedestrian" is ambiguous because the term's ordinary meaning is "a person who goes or travels on foot." Therefore, under the unambiguous and ordinary meaning of the term, plaintiff was not a pedestrian at the time of the accident because he was riding a bicycle.[5]

Reversed.

---

[4] Plaintiff maintains that defendant was not allowed to unilaterally change the terms of its uninsured motorist coverage in 1995 without specifically informing its insureds that the term "pedestrian" would no longer include those individuals injured while riding a bicycle. Plaintiff apparently relies on the previous policy to support his conclusion that before the changes became effective, the parties intended "pedestrian" to also include those individuals on bicycles. It is not clear from the record whether plaintiff's father had purchased this previous version of defendant's policy. Nonetheless, defendant did in fact provide notice of its 1995 policy changes to its insureds, and it is common practice in the insurance industry for an insurer to reserve the right to unilaterally change policy terms and then provide notice of the changes to its insureds along with a brief description of the changes. Accordingly, plaintiff's argument is without merit.

[5] Though not dispositive, we note that, while plaintiff is not entitled to uninsured motorist benefits under the policy, he may be able to seek personal protection insurance benefits from the Assigned Claims Facility created by the no-fault act, see MCL 500.3172; *Moore v Secretary of State*, 73 Mich App 299, 300; 251 NW2d 564 (1977) (injured bicyclist struck by hit-and-run driver obtained benefits from the Assigned Claims Facility).