*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STACY SWANDERSKI,

Plaintiff-Appellant,

v

STATE FARM MUTUAL INSURANCE
COMPANY,

Defendant-Appellee,

and

JOHN DOE,

Defendant.

UNPUBLISHED
April 23, 2026
2:27 PM

No. 373740
Wayne Circuit Court
LC No. 22-002734-NI

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Plaintiff, Stacy Swanderski, suffered serious injuries after an unidentified driver struck her motorcycle, causing her to be launched from the motorcycle and struck a second time by the same vehicle after it failed to stop or slow down. She appeals by right a judgment in her favor against her insurer, defendant State Farm Mutual Insurance Company (State Farm), awarding her lost wages. On appeal, Swanderski challenges the trial court's previous order granting State Farm's motion for summary disposition under MCR 2.116(C)(10) with respect to her claim for uninsured motorist (UM) benefits. We affirm the trial court's decision.

## I. FACTUAL BACKGROUND

Swanderski was riding her motorcycle northbound on I-280 in Ohio, ahead of two other motorcyclists, when a Ford Expedition driven by an unidentified driver, defendant John Doe, struck her motorcycle from behind. Swanderski was launched off her motorcycle "into some type of tumble," at which point the Expedition struck her person although she was not "run over" during the second impact. She testified that if the Expedition had stopped after the first impact, the second

impact would not have occurred. Instead, the Expedition did not stop, or even slow down, after either impact and continued driving past the accident scene.

Swanderski suffered serious injuries as a result of the accident and sought UM benefits from State Farm, which insured her Chevrolet Camaro.[1] State Farm denied coverage, relying on a policy endorsement that excluded UM benefits for an insured who suffered bodily injury while "occupying" a motorcycle owned by the insured which was not insured under the policy. Thereafter, Swanderski filed this action against State Farm, which moved for summary disposition under MCR 2.116(C)(10) based on the language of the endorsement. Swanderski opposed the motion, arguing that she was not "occupying anything" and was "essentially a pedestrian" at the time of the second impact that caused her injuries. She relied on the definitions of "occupying" and "pedestrian" in the policy and maintained that the unambiguous policy language provided coverage.

The trial court granted State Farm's motion, reasoning that "two strikes arose from the same occurrence"—the Expedition first struck Swanderski's motorcycle and then struck Swanderski herself after she was ejected from the motorcycle. The court rejected Swanderski's argument that she was a pedestrian at the time of the second impact or that she was alighting from the motorcycle when the second impact occurred. As previously stated, the court ultimately entered a judgment in Swanderski's favor awarding her wage-loss benefits. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo as a question of law matters involving the interpretation of an insurance contract. *Mapp v Progressive Ins Co*, 346 Mich App 575, 584; 13 NW3d 643 (2023). We also review de novo a trial court's decision on a motion for summary disposition. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). A motion for summary disposition under MCR 2.116(C)(10) asserts "that there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). A court reviewing a motion under subrule (C)(10) "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Id*. at 415-416. An issue of material fact exists if reasonable minds could differ regarding the conclusions drawn from the evidence. *Id*. at 416.

## III. ANALYSIS

Swanderski argues that the trial court erred by determining that a single accident occurred because the Ford Expedition struck her twice—it first struck her motorcycle and then struck her person after she was ejected from the motorcycle. We agree with the trial court that only one accident occurred. Notably, Swanderski alleged in her complaint that a single accident occurred. In Count I of her complaint, seeking UM benefits, she alleged:

---

[1] Progressive Insurance Company (Progressive) insured Swanderski's motorcycle. Swanderski did not file suit against Progressive, and it is not a party to this appeal.

Plaintiff, on or about August 29, 2021, was traveling northbound on Interstate 280 at or near the intersection of Greenbelt Road, when she was involved in *an automobile accident* with another vehicle in the City of Toledo, County of Lucas, State of Ohio and Plaintiff sustained accidental bodily injuries in said motor vehicle accident within the meaning of Defendant's policy and the statutory provision, Section 3105 of the No Fault Act. [Emphasis added.]

Swanderski repeated her assertion that she was "involved in an automobile accident" four additional times in her complaint—twice in Count II (negligence) and twice in Count III (no-fault claim).

Consistent with Swanderski's allegations that she was involved in "an automobile accident," the trial court determined that the "two strikes" she suffered arose from the same occurrence. Specifically, the court stated, "According to her testimony, she was ejected from the motorcycle and then hit. That is two things in the same accident, one being ejected off the motorcycle and then hit by the same Ford that hit her the first time and caused her to eject from the motorcycle."

The trial court was persuaded, in part, by *Estate of Hughes v Citizens Ins Co*, unpublished per curiam opinion of the Court of Appeals issued January 23, 2007 (Docket No. 259987).[2] In that case, a motorcyclist, Timothy Hughes, was ejected from his motorcycle after being struck by a hit-and-run driver and was subsequently run over by a vehicle insured by Empire Fire and Marine Insurance Company (Empire). *Id*. at 1-2. Empire essentially argued that Hughes was a pedestrian at the time he was run over by its insured because he was not occupying the motorcycle under MCL 500.3114(5). Empire maintained it was not responsible for paying no-fault benefits because the carrier that insured Hughes's motor vehicle was higher in the order of priority under MCL 500.3114(1), as it existed at the time of the accident, since a pedestrian's own no-fault insurer was first in the order of priority. *Id*. at 4. This Court rejected that argument, stating as follows:

We are not persuaded by Empire's claim that Hughes, after having been involuntarily ejected from his motorcycle, ceased being the operator of a motorcycle for purposes of MCL 500.3114(5), and became subject to § 3114(1). As the circuit court found, Hughes was "a person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator . . . of a motorcycle." [*Id*. at 4, quoting MCL 500.3114(5).]

The trial court also relied on *Frankenmuth Ins Co v Progressive Mich Ins Co*, unpublished per curiam opinion of the Court of Appeals issued March 19, 2015 (Docket No. 319855). In that case, Jeanine Serba was a passenger on a motorcycle when it "took a spill" on a freeway entrance ramp, resulting in Serba landing in a lane of traffic and being struck by a van a few minutes later. *Id*. at 1. Serba had no-fault insurance coverage through Frankenmuth Insurance Company

---

[2] Although unpublished decisions of this Court are not precedentially binding, MCR 7.215(C)(1), they may be instructive and persuasive. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

(Frankenmuth), whereas the van was insured by Progressive Michigan Insurance Company (Progressive). *Id.* According to Progressive, at the time the van struck Serba, she was not a "passenger of a motorcycle" under MCL 500.3114(5), which at that time stated in pertinent part:

> A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority: (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

In other words, Progressive argued that, minutes after Serba was ejected from the motorcycle, she was a pedestrian, meaning that MCL 500.3114(5) was inapplicable, and her own no-fault carrier, Frankenmuth, was responsible for her benefits. *Frankenmuth*, unpub op at 4. This Court rejected that interpretation of the statute, holding:

> We do not read subsection (5) so narrowly as to conclude that the motorcycle operator or passenger must incur the bodily injury while sitting or being on the motorcycle. Otherwise, without implicating subsection (5), you could have a scenario in which, for example, a car directly struck a motorcycle on the roadway, which in and of itself did not result in an injury to the motorcycle's operator or passenger, but which did result in the operator or passenger being ejected from the motorcycle *and then* sustaining injury when hitting the roadway's pavement. Clearly, the Legislature contemplated application of MCL 500.3114(5) in that type of scenario. Additionally, we cannot conclude that the plain language of subsection (5) requires the motor vehicle to actually collide with or strike the motorcycle, nor does it require a motor vehicle to actually cause the motorcycle to crash. We find it beyond reasonable dispute that had Serba fallen or been thrown from the motorcycle and then struck almost immediately by a trailing motor vehicle, subsection (5) would be triggered. This is because there would exist, in that hypothetical situation, a direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as a passenger of the motorcycle. On the other hand, had Serba fallen or been thrown from the motorcycle, followed by Serba picking herself up from the pavement, moving to the shoulder's roadway, and then walking on the side of the entrance ramp, at which point she was struck by a motor vehicle, we do not believe that subsection (5) would be applicable. This is because there would not exist, in that hypothetical situation, a sufficiently direct correlation between the operation of a motorcycle, the operation of a motor vehicle, injuries arising from an accident involving the motor vehicle, and the injured party's status as a passenger of the motorcycle. The connections would be too tenuous. [*Id.*]

While the present case does not involve the no-fault act's order-of-priority statute, the plain language of the uninsured motorist insurance contract at issue supports the same conclusion that this Court reached in *Estate of Hughes* and *Frankenmuth*—Swanderski's ejection from her motorcycle did not require the conclusion that she ceased occupying the motorcycle for purposes of determining whether she was excluded from receiving UM coverage under the contract. Under

-4-

the subject policy, an insured is covered for uninsured motorist benefits when struck by a hit-and-run driver, whether as a pedestrian or when occupying the insured vehicle:

> ***Uninsured Motor Vehicle*** means:
>
> * * *
>
> 2.  a "hit-and-run" land motor vehicle or motorcycle the owner and driver of which remain unknown and which strikes:
>
> a.  the ***insured***; or
>
> b.  the vehicle the ***insured*** is ***occupying*** and causes ***bodily injury*** to the ***insured***.

However, the policy contains an exclusion pertaining to motorcycles owned by the insured, which states as follows:

> THERE IS NO COVERAGE:
>
> * * *
>
> 2.  FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY***:
>
> a.  WHILE ***OCCUPYING*** A MOTOR VEHICLE OR MOTORCYCLE ***OWNED BY YOU*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR*** . . . .

The policy defines "occupying" as "in, on, entering, or alighting from."

Swanderski was struck by a hit-and-run driver while riding her motorcycle, causing her to be ejected from the motorcycle and then almost immediately struck a second time by the same vehicle. Swanderski's own averments in her complaint consistently state that she was involved in "an accident." That accident began when she was on her motorcycle and finished when she was left in the roadway after being struck a second time by the same vehicle as its driver fled the scene. While Swanderski does not dispute that the subject policy contained an exclusion for bodily injury suffered by an insured occupying a motorcycle owned by the insured, she argues that the policy provides coverage for a pedestrian struck by a hit-and-run driver, and she maintains that any ambiguity between those two provisions must be construed against State Farm, who drafted the contract.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010) (quotation marks and citation omitted). "[T]he language of the parties' contract is the best way to determine what the parties intended." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 476; 663 NW2d 447 (2003). Unless otherwise defined, contractual language is given its plain and ordinary meaning. *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006). "It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the

term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10)." *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). That said, "if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." *Id*. "[A]n insurance policy must be read as a whole to determine and effectuate the parties' intent." *Gavrilides Mgt Co, LLC v Mich Ins Co*, 340 Mich App 306, 317; 985 NW2d 919 (2022) (quotation marks and citation omitted) (alternation in original). If a contract contains an ambiguous term, courts should generally construe the term against the contract's drafter, unless the drafter presents persuasive extrinsic evidence that the parties intended a contrary result. *Cole*, 272 Mich App at 53. "[A] court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise." *Henderson*, 460 Mich at 354.

The contract's terms are not ambiguous. The language plainly excludes coverage for bodily injury suffered while an insured is riding a motorcycle owned by the insured. Reading the contract as a whole, no reasonable person would read it to nonetheless provide coverage when a rider, after being ejected from her motorcycle, is almost immediately struck a second time by the same vehicle that caused her to be ejected. Swanderski at least tacitly admitted as much when she consistently referred to the incident as "an automobile accident" five times in her complaint.

Because we conclude that Swanderski suffered bodily injury in a single motor vehicle accident when she was struck by the hit-and-run vehicle, we need not address her argument that she was not "occupying" the motorcycle, as defined in the contract, when the second strike occurred. Further, Swanderski argues that we should remand this case to the trial court and allow her to present affidavits from the two motorcyclists who were riding behind her, both retired police officers, to show that two accidents occurred. As previously discussed, the trial court properly determined that one accident occurred. Moreover, "[w]hen reviewing a motion for summary disposition, this Court's review is limited to review of the evidence properly presented to the trial court." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009). Therefore, we decline to consider the affidavits of Swanderski's fellow motorcyclists and decline to remand this case to the trial court for consideration of additional evidence.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman