WATTS v POLACZYK

Docket No. 212953. Submitted June 15, 2000, at Detroit. Decided September 22, 2000, at 9:00 A.M.

Tommy Watts brought an action in the Wayne Circuit Court against Chris B. Polaczyk, Miles J. Hammond, Jr., and Hemming, Polaczyk & Cronin, P.C., alleging legal malpractice. The court, Daphne Means Curtis, J., granted summary disposition for the defendants, ruling that the action was barred by a provision in the fee agreement between the parties that provided for binding arbitration of disputes. The plaintiff appealed.

The Court of Appeals *held*:

1. Several State Bar of Michigan informal ethics opinions state that an arbitration agreement between a lawyer and a client is invalid where the client was not given an opportunity to obtain independent counsel concerning the advisability of entering into such an agreement. However, such opinions, though instructive, are not binding on the Court of Appeals.

2. Public policy pronouncements of the Legislature, enacted as statutes, are binding on the Court of Appeals. The Michigan arbitration act (MAA), MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, evidences a strong public policy favoring arbitration. The MAA allows all persons, except infants and persons of unsound mind, to agree in writing to submit to arbitration any controversy that might be subject to a civil action and to accept a circuit court judgment rendered upon an arbitral award. Subsection 5001(2) of the MAA, MCL 600.5001(2); MSA 27A.5001(2), provides that an arbitration agreement "shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract."

3. In this case, the plaintiff voluntarily signed the fee agreement in which he promised to submit to arbitration all disputes arising out of the agreement or the legal representation. The plaintiff's malpractice claim is covered by the language of the arbitration agreement, and the plaintiff has not provided any grounds that would support not enforcing the arbitration agreement.

Affirmed.

ARBITRATION — ARBITRABILITY OF ISSUES.
> A court, when ascertaining the arbitrability of an issue, considers whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract.

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Gregory M. Janks* and *Elizabeth A. Cabot*), for the plaintiff.

*Lipson, Neilson, Jacobs & Cole, P.C.* (by *Phillip E. Seltzer* and *C. Thomas Ludden*), for the defendants.

Before: O'CONNELL, P.J., and KELLY and WHITBECK, JJ.

KELLY, J. Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition in this legal malpractice action. We affirm.

On September 9, 1993, plaintiff lost his left leg as a result of a work-related accident. Four days later, while in the hospital recovering, defendants presented him with a four-page, single-spaced contingent fee compensation agreement for representation in pursuing any claims arising out of the accident. The retainer agreement contained an agreement to arbitrate any disputes arising out of the retainer or the representation.

On December 28, 1995, plaintiff signed a letter of agreement acknowledging that the Supreme Court had granted leave to appeal in several cases involving the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1). Plaintiff agreed to await the outcome of those appeals before deciding whether to file a complaint against his employer. He acknowledged that the period of limita-

tion would expire on September 9, 1996, and that he was free to retain other counsel rather than wait.

The Supreme Court decided the cases on July 31, 1996. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149; 551 NW2d 132 (1996). Plaintiff was thereafter notified by letter dated August 8, 1996, that defendant law firm would no longer be able to pursue his case. He was again notified that failure to file a lawsuit by September 9, 1996, would forever bar his claim, and he was advised to immediately obtain a second opinion. Plaintiff signed an acknowledgment that he had received the letter and his file. Plaintiff was unable to find counsel willing to take his case with such little time remaining, and the period of limitation expired before he filed a complaint.

On September 9, 1997, plaintiff filed this action seeking damages for alleged legal malpractice. Defendants answered the complaint and asserted several affirmative defenses, none of which raised the arbitration agreement as a bar to this litigation. Defendants then sought leave to amend their affirmative defenses, claiming that the existence of the agreement to arbitrate was not discovered until the file was reviewed. Plaintiff opposed the amendment, arguing that amendment would be futile because the arbitration clause was invalid. The court held that such an argument was relevant to the enforceability of the clause, not to whether amendment should be allowed, and granted the motion.

Defendants then sought and were granted summary disposition under MCR 2.116(C)(7) on the basis that the action was barred by the arbitration agreement. Plaintiff's complaint was dismissed, and the matter was ordered to arbitration.

We review a trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(7) de novo to determine whether the moving party was entitled to judgment as a matter of law. *DeCaminada v Coopers & Lybrand, LLP*, 232 Mich App 492, 496; 591 NW2d 364 (1998). In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiff's well-pleaded allegations and construes them in the plaintiff's favor. *Abbott v John E Green Co*, 233 Mich App 194, 198; 592 NW2d 96 (1998). We must consider the pleadings, affidavits, depositions, admissions, and documentary evidence filed or submitted by the parties to determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Employers Mut Casualty Co v Petroleum Equipment, Inc*, 190 Mich App 57, 62; 475 NW2d 418 (1991).

The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court rather than for the arbitrators. *Huntington Woods v Ajax Paving Industries, Inc (After Remand)*, 196 Mich App 71, 74; 492 NW2d 463 (1992). Presumably, judicial questions, like questions of law, are reviewed de novo. See *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

We must decide whether the arbitration agreement contained in defendants' retainer agreement was valid. The clause stated as follows:

> Any controversy, dispute, or question arising out of, in connection with, or in relation to this Agreement or its interpretation, performance or nonperformance, or any breach thereof, shall be determined by arbitration conducted in accordance with the then-existing rules of the American Arbitration Association or the Federal Mediation

and Conciliation Service and any decision rendered by the
Arbitrator shall be final and binding upon the parties; and
Judgment upon any arbitration award, including an award
of damages, may be entered in any court having jurisdiction
thereof. The Arbitrator may not amend, modify, or substi-
tute any of the terms or conditions of this Agreement and
his jurisdiction is thereby limited.

Plaintiff argues that the arbitration agreement
should either be stricken or be limited to disputes
over attorney fees. He asserts that, because defend-
ants failed to advise him that the fee agreement con-
tained an arbitration clause, it is invalid. We reject
this argument. Michigan law presumes that one who
signs a written agreement knows the nature of the
instrument so executed and understands its contents.
*McKinstry v Valley Obstetrics-Gynecology Clinic, PC*,
428 Mich 167, 184; 405 NW2d 88 (1987). Moreover,
mere failure to read an agreement is not a defense in
an action to enforce the terms of a written agree-
ment. *DeValerio v Vic Tanny Int'l*, 140 Mich App 176,
179-180; 363 NW2d 447 (1984).

Next, plaintiff argues that the agreement is not
valid because he was not provided with an opportu-
nity to obtain the advice of independent counsel con-
cerning the advisability of entering into the arbitra-
tion agreement. In support of this argument, plaintiff
relies on two informal ethics opinions addressing
arbitration clauses in retainer agreements. In the first
opinion cited by plaintiff, it was decided that there is
no ethical prohibition against an attorney including in
a fee agreement a provision calling for the arbitration
of fee disputes, provided that the client obtains inde-
pendent counsel concerning the advisability of enter-

ing into such an agreement. State Bar of Michigan Ethics Opinion RI-2 (January 28, 1989).

The second opinion cited by plaintiff noted that an arbitration clause contained in a fee agreement is governed by MRPC 1.8(h), which conditions agreements prospectively limiting the lawyer's liability to a client for malpractice. State Bar of Michigan Ethics Opinion RI-196 (March 7, 1994). MRPC 1.8(h) states as follows:

> A lawyer shall not:
> (1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement; or
> (2) settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

Accordingly, it was deemed a violation of the ethics codes and rules to offer or make an arbitration clause in a retainer agreement that (1) prevents a client from obtaining independent counsel's advice with regard to whether the client should enter into the fee agreement, (2) prevents the client from reporting to the Attorney Grievance Commission information concerning a lawyer's ethical misconduct, (3) prospectively limits a lawyer's legal malpractice liability unless permitted by law and unless the client has the advice of independent counsel, and (4) works a settlement of the lawyer's malpractice liability with an unrepresented or former client. RI-196, *supra*. Before offering or making an arbitration clause in a retainer agreement, the lawyer must advise the client in writing that independent representation is appropriate. *Id.*

After the issuance of the two informal opinions cited by plaintiff, the ethics committee again addressed the question of the propriety of a lawyer entering into an agreement with a client calling for the arbitration of disputes arising out of representation. State Bar of Michigan Ethics Opinion RI-257 (April 8, 1996). In its opinion, the committee noted, "Entering into such an agreement for [alternative dispute resolution] has generally been permitted in Michigan under RI-2." *Id.* The committee further observed, "RI-2 balances the public policy preference for settlement via arbitration with the concern that an unfettered arbitration clause would permit a lawyer to impliedly limit the liability for malpractice with little opportunity for appellate review." *Id.*

Quoting MRPC 1.8(h), the committee reiterated that the inclusion of an arbitration clause in a fee agreement is dependent on the client being given the opportunity to obtain independent counsel concerning the advisability of entering into such an agreement. *Id.*

> [M]erely contracting for ADR on issues of professional malpractice does not violate MRPC 1.8(h). As other ethics opinions have noted, when used appropriately such provisions in fee agreements only address the forum in which liability will be determined, not the duty of the lawyer to exercise reasonable care nor liability for breach of that duty. California State Bar Op 1989-116. However, applying MRPC 1.8(h) to protect against potential abuse of an overreaching lawyer, inclusion of such an ADR clause over file disputes and malpractice claims should be conditioned, again, on the client being given the opportunity to obtain independent counsel concerning the advisability of entering into such agreement. See District of Columbia Op 211 (5/15/90).

Plaintiff argues that defendants' failure to provide him with the opportunity to obtain independent counsel as required by these ethics opinions rendered the arbitration agreement invalid. We disagree. Attorneys have an obligation to follow the rules of professional conduct, which generally operate on ethical principles. MRPC 1.0(b). Attorneys are well-advised to be aware of the State Bar's ethics opinions in order to avoid breaching the rules of professional conduct and being forced to submit to a disciplinary proceeding. *Id.* However, "[a]n informal ethics opinion is prepared and issued by a subcommittee after it has been circulated to subcommittee members and the Chairperson has resolved any conflicting views. Informal ethics opinions generally deal with situations of limited and individual interest or application." State Bar of Michigan Ethics Opinion J-6 (September 20, 1996). These opinions, though instructive, are not binding on this Court. *Barkley v Detroit*, 204 Mich App 194, 202; 514 NW2d 242 (1994).[1]

On the other hand, public policy pronouncements of the Michigan Legislature, enacted as statutes, are binding on this Court. *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 131; 596 NW2d 208 (1999). The Michigan arbitration act (MAA), MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, "evidences Michigan's strong public policy favoring arbitration." *Grazia v Sanchez*, 199 Mich App 582, 584; 502 NW2d 751 (1993). The MAA "is a strong and unequivocal

---

[1] Moreover, though failure to comply with the requirements of MRPC 1.8(h) may provide a basis for invoking the disciplinary process, such failure does not give rise to a cause of action for enforcement of the rule or for damages caused by failure to comply with the rule. MRPC 1.0(b).

endorsement of binding arbitration agreements . . . ."
*Rembert, supra* at 132. The act provides:

> All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action . . . and may, in such submission, agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission. [MCL 600.5001(1); MSA 27A.5001(1).]

The MAA further provides as follows:

> A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter. [MCL 600.5001(2); MSA 27A.5001(2).]

To ascertain the arbitrability of an issue, a court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract. *DeCaminada, supra* at 496, citing *Burns v Olde Discount Corp*, 212 Mich App 576, 580; 538 NW2d 686 (1995). Any doubts about the arbitrability of an issue should be resolved in favor of arbitration. *Id.*

It is undisputed that plaintiff voluntarily signed the fee agreement in which he promised to submit to arbitration all disputes arising out of the agreement or the legal representation. The clause covered "[a]ny controversy, dispute, or question arising out of" the agreement or the representation. Plaintiff's legal malpractice claim is arguably covered by this language.

Plaintiff does not allege fraud or deception in the procuring of the agreement. *Christy v Kelly*, 198 Mich App 215, 217; 497 NW2d 194 (1992). As noted, plaintiff's failure to read or understand the agreement is no defense. *Id.* at 216-217. He has not provided this Court with any grounds for refusing to enforce the valid arbitration agreement. Resolving any doubts in favor of arbitration, the trial court's order granting defendants' motion for summary disposition and compelling arbitration was proper.

Affirmed.