*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD TINSLEY, VAN BUREN STEEL, INC., and VAN BUREN PROPERTIES OF MICHIGAN, LLC,

        Plaintiffs-Appellants,

v

NORMAN YATOOMA and NORMAN YATOOMA & ASSOCIATES, PC,

        Defendants-Appellees.

FOR PUBLICATION
August 13, 2020
9:10 a.m.

No. 349354
Wayne Circuit Court
LC No. 18-011537-NM

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7) (dismissal appropriate because of agreement to arbitrate). We affirm.

## I. BACKGROUND

Plaintiffs retained defendants to represent them in a malpractice action (the underlying litigation) against plaintiffs' former attorneys and business broker. In connection with defendants' representation of plaintiffs in the underlying litigation, they entered into an "Engagement Agreement." The engagement agreement contained a provision for binding arbitration, encompassing, among other issues, any "claim of attorney malpractice." The engagement agreement further provided:

> THE CLIENT UNDERSTANDS AND ACKNOWLEDGES THAT, BY AGREEING TO BINDING ARBITRATION, THE CLIENT WAIVES THE RIGHT TO SUBMIT THE DISPUTE TO A COURT FOR DETERMINATION AND ALSO WAIVES THE RIGHT TO A JURY TRIAL OR TO PROSECUTE A CLASS ACTION.

-1-

Plaintiffs filed a complaint against defendants in the instant suit, alleging legal malpractice in the underlying litigation that forced plaintiffs to settle that action for less than the case was worth. Defendants moved for summary disposition under MCR 2.116(C)(7), asserting that the agreement to arbitrate required dismissal of any court proceedings. Defendants argued that the arbitration provision was valid as a matter of contract law because plaintiff Ronald Tinsley had the engagement agreement reviewed by independent counsel, John Valenti, and fully understood its contents before voluntarily signing it.

Plaintiffs responded that the arbitration provision was unconscionable and unenforceable because it violated Michigan Rule of Professional Conduct (MRPC) 1.8(h)(1), which prohibits a lawyer from "mak[ing] an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement[.]" Plaintiffs asserted that State Bar of Michigan Ethics Opinion R-23 (July 22, 2016), hereafter EO R-23, indicated that an arbitration clause in an attorney-client agreement violates MRPC 1.8(h) unless, before signing the agreement, the client is fully informed of the provision's consequences in writing or consults with independent counsel regarding the arbitration provision. In support of their position, plaintiffs submitted the affidavits of Tinsley and Valenti, averring that they had not discussed the arbitration provision because defendants did not advise Tinsley that such a discussion was warranted. Defendants contended that they were not responsible for Tinsley and Valenti's failure to specifically discuss the arbitration provision contained in the engagement agreement.

The trial court concluded that under the plain language of MRPC 1.8(h)(1) and EO R-23 the arbitration provision was enforceable because Tinsley consulted with independent counsel. The trial court granted defendants' motion for summary disposition on the basis that Tinsley had voluntarily signed the engagement agreement that contained an enforceable arbitration provision. Plaintiffs now appeal.

## II. ANALYSIS

Plaintiffs argue that the arbitration provision is unenforceable because defendants violated their ethical duties under MRPC 1.8(h)(1) and EO R-23 to fully explain the consequences of the provision in writing or to advise plaintiffs to consult with independent counsel regarding the arbitration clause. Plaintiffs maintain that Tinsley and Valenti did not specifically discuss the arbitration provision because defendants did not indicate to Tinsley that such a particular consultation was necessary.

Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred because of "an agreement to arbitrate[.]"[1] We review de novo a trial court's decision on a motion for

---

[1] In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court recited the principles pertaining to a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

summary disposition. *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016). The question whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language. *Id*. at 295.

In *Altobelli*, the Michigan Supreme Court explained as follows regarding the applicability of arbitration:

> Arbitration is a matter of contract. Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation. Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning. In considering the scope of an arbitration agreement, we note that a party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration. The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Id.* at 295-296 (quotation marks, citations, and alterations omitted).]

The Uniform Arbitration Act (UAA), MCL 691.1681 *et seq*., which was enacted pursuant to 2012 PA 371, provides that "[o]n or after July 1, 2013, this act governs an agreement to arbitrate whenever made." MCL 691.1683(1). MCL 691.1686 states, in pertinent part:

> (1) An agreement contained in a record[2] to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract.

---

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

[2] "Record" is statutorily defined as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." MCL 691.1681(2)(f).

(2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

"[C]ontracts that violate our ethical rules violate . . . public policy and are therefore unenforceable." *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002) (addressing referral fee arrangements). "[C]ontracts containing performance requirements that would violate the MRPC are not enforceable because such contracts contradict Michigan's public policy." *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 58; 672 NW2d 884 (2003) (addressing referral fee arrangements). MRPC 1.8(h)(1) was referenced in EO R-23, which opinion came to the following conclusion:

> A provision in a fee agreement for legal services purporting to require the parties to arbitrate any future dispute relating to the representation that might arise between them is not ethically permissible unless, prior to signing the fee agreement, the client either consults with independent counsel or consults with the contracting lawyer and is fully informed in writing regarding the scope and practical consequences of the arbitration provision.

"[E]thical opinions clearly are not binding on this Court and provide little, if any, precedential value, especially when statutory and judicial rules are completely dispositive with regard to the issues that the parties present." *Morris & Doherty*, 259 Mich App at 60-61, citing *Watts v Polaczyk*, 242 Mich App 600, 607; 619 NW2d 714 (2000).

The panel in *Watts* directly addressed the validity of an arbitration provision contained in an attorney-client agreement, concluding that under the then-applicable statutory arbitration scheme, the arbitration provision was fully enforceable. The Court reached this conclusion despite various ethics opinions that were inconsistent with the ruling and regardless of the fact that the defendants had not specifically advised the plaintiff about the arbitration provision or given him the opportunity to obtain the advice of independent counsel on the matter. *Watts*, 242 Mich App at 604-609. The Court reasoned:

> These [ethics] opinions, though instructive, are not binding on this Court. On the other hand, public policy pronouncements of the Michigan Legislature, enacted as statutes, are binding on this Court. . . .
>
> * * *
>
> It is undisputed that plaintiff voluntarily signed the fee agreement in which he promised to submit to arbitration all disputes arising out of the agreement or the legal representation. . . . Plaintiff's legal malpractice claim is arguably covered by this language.
>
> Plaintiff does not allege fraud or deception in the procuring of the agreement. As noted, plaintiff's failure to read or understand the agreement is no defense. He has not provided this Court with any grounds for refusing to enforce the valid arbitration agreement. Resolving any doubts in favor of arbitration, the

trial court's order granting defendants' motion for summary disposition and compelling arbitration was proper. [*Id.* at 607-609 (citations omitted).]

Likewise, in this case, it is undisputed that Tinsley voluntarily signed the engagement agreement that contained the arbitration provision. And, unlike the plaintiff in *Watts*, Tinsley was a sophisticated businessman who had the opportunity to review the engagement agreement with experienced independent counsel before he signed it. For those reasons, the present action is even more compelling than *Watts* with respect to the need to enforce the arbitration clause. We do note that, as quoted earlier, the UAA provides that an arbitration "agreement is valid, enforceable, and irrevocable *except on a ground that exists at law or in equity for the revocation of a contract*." MCL 691.1686(1) (emphasis added). This language essentially incorporates common-law contract principles. We do believe that a violation of the MRPC could potentially serve as a basis to revoke an arbitration provision under the UAA.[3]

First, we are not entirely convinced that MRPC 1.8(h)(1) even applies to an arbitration provision, considering that it specifically concerns "an agreement prospectively limiting the *lawyer's liability* to a client for malpractice[.]" (Emphasis added.) Although there may not be access to the courts for resolution with binding arbitration, appellate or otherwise, we question whether arbitration actually limits liability. Nevertheless, assuming that MRPC 1.8(h)(1) was implicated, plaintiffs were "independently represented in making the agreement," which is all that MRPC 1.8(h)(1) requires.[4] And EO R-23 merely requires, as one alternative, that a client consult with independent counsel before signing the fee agreement; that is what occurred here. To the extent that EO R-23 could be construed to demand more, we disavow it.

Nothing in the plain language of MRPC 1.8(h)(1) suggests that a contracting attorney commits an ethical violation by demanding arbitration when a former client, who actually consulted with independent counsel regarding the underlying attorney-client agreement that contained the arbitration clause, fails to bring up the clause or issue during the consultation. And *Watts* makes clear that a failure to read an agreement is no defense. Furthermore, nothing in the plain language of MRPC 1.8(h)(1) or any other MRPC indicates that an attorney needs to specifically advise a client that a consultation with an independent attorney regarding a retainer agreement should or must entail a discussion of an arbitration provision contained in the agreement. Here, the entire engagement agreement between plaintiffs and defendants was only four pages long. The arbitration provision warned plaintiffs in capital letters that signing the engagement agreement would waive the right to submit disputes to a court. Tinsley consulted with independent counsel Valenti regarding the engagement agreement; nothing more was required. It would seem a bit ludicrous to have mandated defendants to particularly inform plaintiffs that Valenti must examine the arbitration provision as part of his review of the engagement agreement.

---

[3] The parties do not address the UAA. Assuming that the arbitration clause in the engagement agreement is not covered by the UAA, see MCR 3.602(A), our ruling would be the same under general contract principles.

[4] We suggest contemplation by the State Bar of Michigan and our Supreme Court of an addition to or amendment of MRPC 1.8 to specifically address arbitration clauses in attorney-client agreements. The issue raises sufficient concerns justifying clarification on the subject.

In sum, there was no ethical violation, and the arbitration provision is enforceable. Accordingly, the trial court did not err in summarily dismissing the legal malpractice action under MCR 2.116(C)(7).

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel