*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN G. GRAHAM,

       Plaintiff-Appellant,

v

VIVIAN A. GRAHAM,

       Defendant-Appellee.

UNPUBLISHED
February 10, 2022

No. 355029
Marquette Circuit Court
LC No. 17-055876-DO

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In this postjudgment divorce action, plaintiff appeals by delayed leave granted[1] the circuit court's orders initially awarding monthly spousal support of $950 to defendant through the age of 62, and subsequently denying plaintiff's motion to terminate spousal support but reducing the monthly amount to $550. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

In November 2017, after 20 years of marriage, the parties divorced. Neither party left the marriage with much property. The judgment of divorce did not initially award spousal support to either party, but held the matter in abeyance pending a "[m]otion upon proper showing of material changed circumstances from those existing at the time of entry of the within Judgment," and further stated that that "[i]n lieu of temporary spousal support, . . . Defendant shall have the right to reside in the former marital home at no cost to her," but that "[i]n the event that this arrangement becomes unworkable . . . Defendant shall have the right to petition the Court requesting an award of spousal support."

---

[1] *Graham v Graham*, unpublished order of the Court of Appeals, entered March 3, 2021 (Docket No. 355029).

After the divorce, pursuant to their agreement, defendant initially resided in the former marital home along with plaintiff. Defendant did not pay rent and plaintiff did not pay spousal support. Both parties remained employed as occupational therapists. As during their marriage, plaintiff worked full time, or between 32 to 40 hours per week, and defendant worked part time, between 20 and 25 hours per week. Defendant claimed longstanding health issues, including severe anxiety, depression, and chronic fatigue, which limited her ability to work.

In September 2019, almost two years after the divorce, the parties agreed that their living arrangement had become unworkable, and plaintiff asked defendant to move out of the former marital home. Defendant then moved the trial court to establish spousal support, asserting that her needs would drastically increase after vacating the home because she would now incur housing costs, and that she could not afford suitable independent housing with her own limited income. She also indicated that she planned to reside temporarily with her parents.

Plaintiff, who was 59 years old at the time of the spousal support hearing, opposed defendant's motion, indicating that defendant did not have a current need for support because she would reside with her parents rent free, and earned sufficient income to cover her own living expenses. Plaintiff further maintained that covering his monthly living expenses, including trying to pay off his credit card debt, left him only $200 per month, which he wished to save for retirement. He testified that he would have a difficult time paying more than $150 of spousal support per month.

After conducting an evidentiary hearing, the trial court ordered plaintiff to pay monthly spousal support of $950, finding, in part, as follows:

> Here, the parties were married for approximately 20 years. Plaintiff is 58 years of age and Defendant is 56 years of age. Plaintiff and Defendant are both employed by the same independent occupational therapist business . . . . Plaintiff has been employed in that capacity for 20 years, and Defendant has been employed for 31 years in total, but not with the same employer.
>
> Defendant is employed on a part-time basis working approximately 20 to 25 hours per week over the last couple of years. She has not worked on a full-time basis since 2001 when she suffered a broken back. [She] has been treating for various health issues, including anxiety/depression and acute/chronic stress. Although she has continued to work part-time, her doctor recommends that she terminate her employment and apply for Social Security Disability. The Court was also provided with evidence showing that Defendant is not capable of more than part-time employment given her significant health issues, which have deteriorated. Defendant's gross earnings are approximately $3,000 per month.
>
> Plaintiff, for the bulk of the marriage, was the primary wage earner working on a full-time basis. Through August 31, 2019, Plaintiff had gross earnings of approximately $6,640 per month. Plaintiff has no known health conditions and appears to be in good physical health.
>
> Both parties have similar monthly expenses in the neighborhood of $4,000 per month, although Defendant currently is not paying housing expenses. [Her]

housing plans are to live in her parents' unfinished basement in Autrain, Michigan for the time being.

All-in-all, the Court concludes that Plaintiff shall pay spousal support in the amount of $950 per month, which is just and reasonable under the circumstances of this case and is payable from November 1, 2019. Spousal support shall run through Defendant's age of 62, but is modifiable upon a material change in circumstances.

After the COVID-19 crisis struck, plaintiff moved the trial court to terminate or modify his spousal support obligation in light of his reduced income. Defendant opposed the motion. After conducting an evidentiary hearing, the court ordered a temporary reduction in monthly support to $550, effective May 1, 2020. The court found that plaintiff had experienced a decrease in his gross earnings as the result of a COVID-related reduction in his work hours, which was a material change in circumstances warranting a temporary reduction. Otherwise, the court adopted its prior findings and added no new ones regarding the spousal support factors, finding that many of the factors, including the parties' age, health, financial needs, and ability to work, remained unchanged. The court further decreed that, after six months, defendant might petition the court for further review to determine if an upward adjustment was warranted.

Plaintiff now appeals both spousal support orders.

## II. SPOUSAL SUPPORT PROVISION

Plaintiff first argues that the trial court erred in awarding spousal support in the first instance because, under the terms of the divorce judgment, defendant was initially required to demonstrate a material change in circumstances, but could not do so because she planned to reside with her parents, at no cost, after vacating the former marital home. We disagree.[2]

In general, "judgments are to be construed like other written instruments." 46 Am Jur 2d, Judgments, § 66. "The unambiguous terms of a judgment, like the terms of a written contract, are to be given their usual and ordinary meaning, and the legal effect of a judgment must be declared in light of the literal meaning of the language used." *Id*. "When looking at the words of a judgment

---

[2] The parties dispute whether this issue was preserved for appellate review. Generally, to preserve an issue for appellate review, it must be raised before the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). We agree that the parties did not specifically raise the issue regarding the proper interpretation of the judgment's spousal support provision with respect to whether defendant was required to show a material change in circumstances to justify support once their joint living arrangement became unworkable. Nevertheless, we may consider an issue even if unpreserved, *id*. at 228, and here elect to do so. Our review of unpreserved issues is limited to plain error affecting substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 427 (quotation marks and citations omitted).

-3-

and order in order to construe them, courts look at the entire order and construe the judgment as a whole to determine the court's intent." *Id*. "A judgment should be construed . . . in such a way that will give force and effect to every word of it, if possible, and make its several parts consistent, effective, and reasonable." *Id*.

There is no dispute that, almost two years after the parties divorced, their joint living arrangement became "unworkable," thereby triggering defendant's "right," under the divorce judgment, to petition the trial court for spousal support. However, the parties dispute whether, in that event, defendant was required to initially demonstrate a material change in circumstances to justify spousal support. The spousal support provision at issue provides as follows:

> **IT IS HEREBY ORDERED AND ADJUDGED** that neither party shall pay spousal support to the other at the present time and the issue of spousal support shall be held in abeyance. Either party may present this issue to the Court at a later date by way of Motion upon proper showing of material changed circumstances from those existing at the time of entry of the within Judgment. In lieu of temporary spousal support, the parties have agreed that the Defendant shall have the right to reside in the former marital home at no cost to her following the dissolution of the parties' marriage. In the event that this arrangement becomes unworkable, for whatever reason, the Defendant shall have the right to petition the Court requesting an award of spousal support at that time.

First, this language clearly evidences the trial court's intent to reserve the issue of spousal support for future determination if needed. *Black's Law Dictionary* (10th ed), defines the term "abeyance" as "[t]emporary inactivity; suspension."[3] The judgment thus clearly and un-ambiguously reflects the intent to temporarily suspend the issue of spousal support.

The provision then sets forth the circumstances under which the parties might request spousal support. It first provides that either party may present the issue at a later date upon a showing of material changed circumstances. This comports with the general legal requirement that "[t]he modification of an award of spousal support . . . be based on new facts or changed circumstances arising after the judgment of divorce," and that "[t]he party moving for modification has the burden of showing such new facts or changed circumstances." *Gates v Gates*, 256 Mich App 420, 434; 664 NW2d 231 (2003). The provision additionally preserves defendant's "right" to petition the court for spousal support in the event the parties' agreed-upon joint living arrangement, in lieu of temporary support, became unworkable. The definition of "right" in *Black's Law Dictionary* (10th ed) includes "[s]omething that is due to a person by just claim, legal guarantee, or moral principle," and "[a] power, privilege, or immunity secured to a person by law." *Merriam Webster's Collegiate Dictionary* (11th ed) provides a similar definition, "the power or privilege to which one is justly entitled," or "something to which one has a just claim." The court's use of the term "right" thus clearly indicates the intent that defendant retain the prerogative to claim spousal support in the event that the parties' joint living arrangement became unworkable.

---

[3] This Court may refer to dictionary definitions to determine the ordinary meaning of a term. See *Cole v Auto Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006).

See MCL 552.13(1) (permitting the court to award alimony); MCL 552.23(1) (the court may award spousal support that is just and reasonable under the circumstances).[4]  At issue is whether, under the judgment, defendant was required to show a material change in circumstances, beyond that the living arrangement became unworkable, in order to request spousal support.

The judgment plainly distinguished the parties' general prerogative to raise the issue of spousal support upon a showing of materially changed circumstances, i.e., support modification, from defendant's specific "right" to petition for spousal support in the event their agreed-upon living arrangement became unworkable.  Unlike the language generally permitting either party to present the issue of spousal support by motion "upon proper showing of material changed circumstances," the language specific to defendant's right to request spousal support in the event their living arrangement became unworkable did not otherwise explicitly condition that right upon a showing of materially changed circumstances.  As defendant argues, construing the provision in a manner that requires her to demonstrate a material change in circumstances would not give effect to the provision's last sentence, "In the event that this arrangement becomes unworkable, for whatever reason, the Defendant shall have the right to Petition the Court requesting an award of spousal support at that time."  This is because the provision's earlier language already permitted either party to present the issue of spousal support "upon a proper showing of material changed circumstances . . . ."  Accordingly, if defendant were required to show a material change in circumstances beyond that the parties' living arrangement became unworkable, there would be no need to provide her with a separate and distinct "right" to petition the court for support in that specific event.  Plaintiff's interpretation would render the latter provision meaningless.  Therefore, construing the judgment in a manner that gives force and effect to all its parts, and makes those parts consistent, effective, and reasonable, see 46 Am Jur 2d, Judgments, § 66, we conclude that the trial court clearly intended that the issue of spousal support for defendant would ripen if and when the parties' agreed-upon living arrangement in lieu of spousal support became unworkable, without defendant's having to make a separate showing of a material change in circumstances.

This construction comports with a trial court's prerogative to reserve the issue of spousal support for future determination.  See *McCoy v McCoy*, 317 Mich 478, 480-482; 27 NW2d 62 (1947).[5]  More specifically, this Court has held that, "where the question of alimony is reserved, no change of circumstances is required as a prerequisite to an award of alimony at a later time." *McCarthy v McCarthy*, 192 Mich App 279, 283; 480 NW2d 617 (1991).  That is, "a change in circumstances is a prerequisite to the modification of an alimony award only when an award has in fact been made." *Id*., citing *Battisti v Battisti*, 24 Mich App 262, 264; 180 NW2d 64 (1970).  In this case, because the divorce judgment did not include a spousal support award, but rather explicitly reserved the question pending the eventuality that the parties' living arrangement

___

[4] "Alimony" and "spousal support" are interchangeable terms, but "[t]he phrase 'spousal support' now is often employed in statutes and court rules." *Rickner v Frederick*, 459 Mich 371, 372 n 1; 590 NW2d 288 (1999).

[5] MCR 3.211(B)(4) specifically directs the trial court to include "a provision reserving or denying spousal support, if spousal support is not granted" in the divorce judgment.

became unworkable, defendant needed show no other change of circumstances in order to ask the court exercise that reservation.

Nevertheless, we agree with defendant that the parties' termination of their agreed-upon living arrangement itself constituted a material change in circumstances, because that development left defendant in need of her own housing. Although plaintiff protests that defendant planned to reside with her parents upon vacating his home, defendant's testimony indicated that neither she, nor her parents, intended for that arrangement to be a permanent one. We thus conclude that plaintiff has failed to bring to light any plain error affecting his substantial rights with regard to the interpretation of the divorce judgment's spousal support provision.

III. INITIAL SPOUSAL SUPPORT AWARD

Plaintiff next argues that the trial court's dispositional ruling awarding defendant $950 per month was inequitable, on the grounds that the court's underlying findings with respect to defendant's needs and his ability to pay were clearly erroneous. We agree, in part.

It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion. An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012) (quotation marks and citations omitted).]

Plaintiff argues that the trial court clearly erred in its findings regarding his ability to pay, defendant's needs and ability to work, and the parties' health, and that, consequently, the monthly support award of $950 was inequitable. He asserts that the court overestimated his ability to pay spousal support by failing to take into account that his take-home pay was considerably less than his gross earnings, and by underestimating his living expenses. At the same time, according to plaintiff, the court overestimated defendant's need for support by underestimating her take-home pay, failing to take into account that she worked only part time and thus could potentially earn more money, and drastically overstating her expenses because she planned to reside with her parents rent free after vacating the former marital home.

"Spousal support does not follow a strict formula." *Loutts*, 298 Mich App at 30. Instead, "Michigan's statute governing spousal support favors a case-by-case approach to determining spousal support." *Id*. at 29.[6] A court should consider several factors, including the following:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. at 31 (quotation marks and citations omitted.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Id*. at 32 (quotation marks and citation omitted). Again, "[t]he primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Id*. See also, MCL 552.23(1); *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993) ("a judge's role is to achieve equity").

When, as here, the trial court has reserved the issue of spousal support, the court "should consider the same factors used in making the initial alimony decision." *McCarthy*, 192 Mich App at 284. Any changes in the parties' positions "are important insofar as they dictate the parties' needs and ability to pay at the end of the period." *Id*. at 284. The spousal support decision "must be made according to the circumstances of the parties at that time." *Id*. at 283.

We find no abuse of discretion in the trial court's determinations that defendant had a need for spousal support, and that plaintiff had the ability to pay some level of it. The evidence established that, upon termination of the parties' agreed-upon living arrangement, defendant would no longer have a place to live and could not afford suitable, independent housing with her own limited income. Further, the evidence established that defendant's significant health issues

---

[6] MCL 552.23(1) governs spousal support and provides as follows:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

See also MCR 3.206(A)(5) (a party requesting spousal support "must allege facts sufficient to show a need for such support and that the other party is able to pay").

precluded her from working more than part time, and that, without support, she could not meet her basic needs. In light of defendant's health issues, her limited income, and her need in the near term for independent housing, defendant clearly demonstrated a need for spousal support.

On the other hand, plaintiff's financial situation was relatively stable, he was not currently hampered by health issues that impacted his ability to work, and he would continue earning income from his full-time employment, the take-home pay from which was sufficient to cover his own monthly living expenses, and leave him with a small surplus. In short, we agree that the evidence generally showed that plaintiff had an ability to pay some level of support, while defendant, especially considering pending need for independent housing, would be left impoverished without support. Therefore, the trial court did not abuse its discretion in determining that it was just and reasonable to award defendant some level of spousal support.

We disagree with plaintiff's argument that the trial court clearly erred in finding that defendant was not capable of working more than part time. To the contrary, the evidence convincingly showed that defendant had significant and debilitating health issues with both physical and emotional symptoms, that precluded her from working more than part time. Defendant testified about her significant and fairly longstanding health and emotional issues and her resulting inability to work more than 20 to 25 hours per week; she explained that 20 hours was "pushing it." Plaintiff acknowledged defendant's health struggles, but opined that she was capable of working longer hours. Defendant, however, testified about how her recent attempt to increase her hours to full time caused severe anxiety and suicidal ideations that resulted in her admission to a psychiatric hospital. And, significantly, two treating physicians attested to defendant's health and emotional issues and recommended that she further reduce her workload, or stop working altogether and pursue disability assistance. This evidence clearly supported the trial court's finding that defendant was not capable of working more than part time. Although plaintiff disagreed, the credibility of defendant's testimony, and of the medical evidence attesting to her limited ability to work because of her health issues, was for the trial court to assess, not this Court. See *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010) ("Special deference is given to the trial court's findings when they are based on the credibility of the witnesses."). And, while plaintiff also argues that defendant could possibly obtain a different job that paid for all the hours she actually worked, defendant testified that she had sought other opportunities within the occupational therapist field, but that potential employers had not expressed any interest, and that she would not earn as much in other fields. This testimony supported the conclusion that defendant's ability to obtain different, more lucrative, employment was limited.

We also disagree with plaintiff's assertion that the trial court underestimated defendant's income. Although defendant's testimony supported the court's finding that she had gross earnings of approximately $3,000 per month, her pay stubs revealed that her average year-to-date gross monthly wages were, in actuality, higher. Defendant's average monthly take-home pay, after accounting for withheld taxes, disability insurance, and mileage and phone reimbursements, was in the range of $3,000.[7] And, defendant's net pay would more accurately reflect her income

---

[7] Defendant's pay stubs reflect that her 2019 year-to-date gross earnings through July 31 were $26,863 or $3,838 per month ($26,863 divided by 7 months). However, defendant did not include

actually available to support her needs, especially considering the lack of any evidence that she had other sources of income to rely on. Because defendant's net income fairly approximated the figure the trial court used for reference, any error in the court's determination of her gross earnings was harmless.

We also disagree with plaintiff's argument that the trial court erred by considering defendant's anticipated housing costs in evaluating her needs because she planned to reside with her parents after vacating the former marital home. To the contrary, the evidence established that defendant had a need in the near term to obtain independent housing because she could no longer reside in plaintiff's home, but that she did not have the means to obtain suitable rental housing on her own. Defendant testified concerning her efforts to locate affordable rental housing, and that she was having a "really hard time" because suitable housing rented for more than she could then afford, and that, in order to make decisive housing plans, she needed to know how much her spousal support would be. Her plan in the meantime was to live in her parents' unfinished basement or guest bedroom until she was able to obtain her own housing. There was no testimony that defendant could rely on her parents for permanent housing; she testified that she could not stay there indefinitely, did not want to, and also that living at her parents' house would add significant mileage to her work commute. This testimony sufficiently established that, at this juncture, residing with her parents was intended to be a temporary response to her no longer residing in the former marital home while unable to afford independent suitable housing without support.[8] Therefore, we find no error in the trial court's consideration of defendant's anticipated housing costs in assessing her need for spousal support, or in its finding that she had $4,000 in monthly expenses with housing, which was at the high end of the range supported by the evidence.

We reject plaintiff's attempt to analogize *Esslinger v Esslinger*, 9 Mich App 11, 18-19; 155 NW3d 702 (1967) with the instant case in support of his argument that the trial court erred in considering defendant's future housing costs in assessing her needs. The facts of *Esslinger* are

---

her taxes or disability insurance premiums in her reporting of monthly expenses, making it appropriate to subtract those amounts from her gross to arrive at her net pay. Her pay stubs showed year-to-date deductions of $6,052 for withheld taxes and $1,080 for disability insurance, and thus a net pay of $19,731 or $2,819 per month ($19,731 divided by 7 months). Her pay stubs also showed that she was paid year-to-date mileage and phone reimbursements of $2,102 and $225, respectively. Adding her reimbursements to her year-to-date net pay yields a take-home pay of $22,058 or $3,151 per month. Because she included her car and phone expenses in her reporting of monthly expenses, it was appropriate to include these reimbursements in her disposable income, which better reflects her income available to cover her needs. Income for spousal support purposes may include items other than net taxable income. See *Torakis v Torakis*, 194 Mich App 201, 204-205; 486 NW2d 107 (1992); *Boyer v Boyer*, 30 Mich App 623, 626; 186 NW2d 842 (1971) (gross income is not the only consideration in determining a party's ability to pay).

[8]It is apparent that the trial court appropriately recognized, and considered, the temporary nature of defendant's immediate housing plan, having acknowledged that she was not currently paying housing expenses, and that her "housing plans are to live in her parent's unfinished basement in Autrain, Michigan for the time being."

clearly distinguishable. In *Esslinger*, the husband speculated about a medical issue that might reduce his future earnings in 10 to 15 years. *Id*. at 15, 18. This Court held that "[t]he intent of the legislature and the courts clearly is to allow for future modification of divorce decrees when in fact the husband's income has been diminished," noted that there was "no evidence to show any danger of severe reduction of his income in the near future," and stated the relevant consideration was "the present and immediate prospects for health of the husband." *Id*. at 18-19. In contrast, in the instant case, the evidence indicated that defendant needed housing in the near term, and that her ability to obtain independent housing depended on the amount of spousal support awarded. Further, if defendant's housing circumstances were to materially change, so that her temporary residence with her parents became an indefinite or permanent situation, thereby potentially eliminating her need for independent housing, plaintiff would be entitled to petition the court for modification of spousal support.[9] See *Gates*, 256 Mich App at 434-435; MCL 552.28(1).

On this record, we conclude that the trial court did not clearly err in its findings regarding defendant's needs. In awarding defendant monthly support of $950, it is apparent that the trial court attempted to cover those needs, including for independent housing. Specifically, the court found that her monthly income was $3,000, which approximated her average take-home pay, and that her monthly expenses, including anticipated housing costs, totaled approximately $4,000. Thus, adding the court-ordered monthly support of $950 to defendant's income of $3,000 would result in an estimated $3,950 to cover her needs, leaving her with, at worst, only a slight shortfall.

However, it is not apparent from its ruling that the trial court properly balanced plaintiff's actual ability to pay that support against the parties' respective needs. See MCL 552.23(1). The court did not make any specific findings regarding plaintiff's actual ability to pay. See MCL 552.23(1); *Loutts*, 298 Mich App at 31-32. And, although the court's findings that plaintiff had monthly gross earnings of $6,640, which was supported by his testimony and pay stubs,[10] and that he had monthly expenses of approximately $4,000, which was at the low end of the range supported by the evidence, were not clearly erroneous, we agree with plaintiff that his gross earnings did not accurately reflect the income actually available for his needs, including support obligations. The court should have considered his actual take-home pay.

In determining whether to award spousal support, the relevant criterion is plaintiff's ability to pay, in light of the character and situation of the parties, and all the other circumstances of the case. See MCL 552.23(1); MCR 3.206(A)(5). In *Boyer v Boyer*, 30 Mich App 623, 626; 186 NW2d 842 (1971), this Court explained as follows:

> Appellant's contention that the trial court erred when it considered gross income rather than net income is neither supported by the record nor relevant. Ability to pay is the relevant criterion in determining whether alimony should be increased. The trial court's opinion makes it clear in no uncertain terms that gross

---

[9] As addressed below, defendant was still residing with her parents at the time of the hearing on plaintiff's motion for support modification, at which time it would have been appropriate for the trial court to reassess her housing needs.

[10] Plaintiff admitted that his gross earnings for 2019 through August 31 totaled approximately $53,198 or $6,650 per month ($53,198 divided by 8 months).

income is not, and was not, the only consideration determining plaintiff's ability to pay.

Therefore, while the trial court was not required to use specifically plaintiff's net income or gross income in determining his ability to pay, it must consider his *ability* to pay.

Initially, while plaintiff takes issue with the trial court's finding that he "has no known health conditions and appears to be in good physical health," in light of his chronic back pain, there is no testimony that his condition presently limited his ability to work so as to impact his income and, consequently, his ability to pay support. Nor did plaintiff testify that he planned, in the near term, to reduce his workload from full time because of his back pain. Instead, he testified that, despite his pain, he continued to work full time and planned to do so until he retired. Again, it is the current circumstances that dictate the parties' needs and ability to pay and so the trial court properly did not consider the possibility that plaintiff's back condition might worsen in the future so as to preclude him from working full time. See *Esslinger*, 9 Mich App at 18-19. And, if plaintiff's ability to work should materially change in the future, he would then be entitled to petition the court for a modification of support. See *Gates*, 256 Mich App at 434-435; MCL 552.28. Accordingly, any error in the court's finding regarding plaintiff's health was harmless. See MCR 2.613(A).

However, we agree with plaintiff that the trial court, by relying on his gross earnings, overstated his income and, consequently, his ability to pay. Plaintiff points out that his monthly take-home pay was significantly less than the $6,640 gross earnings the trial court cited, and thus presumably relied upon. Referring to his June 2019 take-home pay of $3,862, and his testimony that his monthly net varied significantly but averaged $3,700 to $3,800, plaintiff argues that, in actuality, he took home only "roughly enough" to cover his own monthly living expenses of about $4,000. Although it is apparent from his pay stubs that plaintiff's average monthly take-home pay was actually greater than he asserted, and was likely sufficient to cover his own estimated living expenses, we agree that he would not be able to additionally cover $950 of court-ordered spousal support without incurring a monthly deficit.[11] Therefore, plaintiff's take-home pay—the income actually available for his needs—was significantly less than the $6,640 gross earnings to which the court referred when explaining its spousal support decision.

---

[11] Plaintiff's pay stubs reflect that he had 2019 year-to-date gross earnings through August 31 of $53,198 or $6,650 per month. Accounting for the year-to-date deductions from his gross of $1,089 for health insurance premiums, $1,596 for voluntary contributions to an employer-sponsored IRA, $13,767 for withheld taxes, $1,054 for disability insurance premiums, and $85 for United Way contributions, and his phone reimbursement of $255, leaves a projected annual net of $35,862, or a monthly average to that date of $4,483. It was appropriate to reduce his gross earnings for taxes, insurance, and IRA contributions because it does not appear that he included these items in his expenses, and to include his phone reimbursement because his phone bill was listed as a monthly expense. Thus, after covering his own estimated monthly living expenses of $4,000, plaintiff would be left with an estimated $483 to cover $950 of court-ordered spousal support.

Given the disparity between plaintiff's gross earnings and take-home pay, we agree that gross earnings did not fully reflect the extent of plaintiff's ability to pay spousal support. The trial court did not identify any other sources of current income from which plaintiff could draw to cover a shortfall. He testified that, in a good month, he has a surplus of $200 after paying his living expenses, and neither his retirement funds, nor his house, produced currently available income; he further testified that he might need to sell his house to pay spousal support. Plaintiff's bank accounts had only minor balances at the time of the hearing. We note that the trial court did not discredit any of that testimony or evidence. Generally, "a party should not have to invade property for support . . . ." *Richards v Richards*, 310 Mich App 683, 692; 874 NW2d 704 (2015) (quotation marks and citation omitted). Although this Court, in dicta, "has indicated that a court could allow, but need not require, a party to invade the corpus of its assets to pay alimony," *Torakis v Torakis*, 194 Mich App 201, 204-205; 486 NW2d 107 (1992), citing *Zecchin v Zecchin*, 149 Mich App 723, 735; 386 NW2d 652 (1986), there is no indication in this case that the trial court intended that either party invade his or her limited assets for purposes of support. Therefore, we agree with plaintiff that, in this case, the trial court, by relying on his gross earnings, likely overstated his income, and consequently, his ability to pay support.

It may be that no apportionment of available income would avoid a monthly shortfall between the parties. Although the trial court may have intended that plaintiff invade his assets to cover an anticipated shortfall, and thought that equitable in light of plaintiff's superior earnings capability, see MCL 552.23(1), the court did not so indicate. Because the court did not make findings relating particularly to plaintiff's income actually available to cover his own needs along with spousal support, it is not apparent on the record that that the support award was fair and equitable. For these reasons, we agree that the trial court should have given consideration to plaintiff's net income in assessing his ability to pay support, and thus remand for a redetermination of spousal support.

Additionally, we agree with plaintiff that any spousal support award should have been payable from the time defendant vacated the former marital home. Again, the divorce judgment allowed defendant to reside in the former marital home at no cost in lieu of receiving spousal support. Thus, so long as she continued to reside in the home, at no cost, plaintiff was not required to pay support. The trial court awarded defendant spousal support payable from November 1, 2019, but, according to plaintiff, defendant did not move out until December 23, 2019. The record does not indicate definitively when defendant actually vacated the home, and the trial court offered no such finding.[12] Thus, remand is also necessary to ascertain that date, and to adjust the spousal support award accordingly.

## IV. SUPPORT MODIFICATION

Plaintiff next argues that the trial court abused its discretion by denying plaintiff's motion to terminate spousal support, and instead ordering a temporary reduction in monthly support from $950 to $550, because the court failed to reassess defendant's need for support. We agree.

---

[12] We note that defendant herself acknowledged in her proposed findings provided to the trial court that spousal support should begin on the date she vacated the home.

"The modification of an award of spousal support must be based on new facts or changed circumstances arising after the judgment of divorce." *Gates*, 256 Mich App at 434. "The party moving for modification has the burden of showing such new facts or changed circumstances." *Id*. at 434. It "requires an evaluation of the circumstances as they exist at the time modification is sought." *Laffin v Laffin*, 280 Mich App 513, 519; 760 NW2d 738 (2008).

It is apparent from the record that, despite the uncertainties with regard to plaintiff's future workload, his ability to pay had decreased from the previous support hearing because of a reduction in his hours worked resulting from the COVID-19 pandemic, which increased his monthly deficit, and warranted a reduction in support. Plaintiff expected a reduced workload from his normal 85 hours per twice-monthly pay period to 60 hours, while his monthly living expenses remained at approximately $4,000. Therefore, the court properly determined that a reduction in support was in order.

However, the spousal support decision necessarily required not only an assessment of plaintiff's ability to pay, but also an assessment of defendant's current needs. MCL 552.23(1); *Richards*, 310 Mich App at 691. The evidence revealed that defendant's workload, and thus, her income, was not as substantially impacted by the COVID-19 crisis. And defendant testified at the hearing, held approximately five months after the court's entry of its initial support order, that she was still residing with her parents. Because the initial support award was based on defendant's need to obtain independent housing, and she still resided with her parents, we conclude that the court should have reevaluated her current need for housing in deciding whether to terminate or modify support. Although the court appropriately considered plaintiff's decrease in wages, it failed to evaluate defendant's then-existing need for spousal support to obtain independent housing, and thus failed to properly balance plaintiff's reduced ability to pay against defendant's needs. MCL 552.23(1); *Richards,* 310 Mich App at 691.

For these reasons, we reverse the trial court's spousal support orders and remand for a determination anew of the proper amount of support. "On remand, the trial court must consider the relevant factors as they pertain to the parties and make specific findings of fact that justify its ultimate award of spousal support . . . keep[ing] in mind that its goal is to reach a result that is just and reasonable under the circumstances and that balances the incomes and needs of the parties in a way that will not impoverish either party." *Myland v Myland*, 290 Mich App 691, 699; 804 NW2d 124 (2010) (quotation marks, citation, and alteration omitted).

Reversed and remanded. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica